**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

**DUSTIN LEE PATTERSON**                                                  **PLAINTIFF**

**VERSUS**                           **CIVIL ACTION NO. 2:24-cv-00010-TBM-RPM**

**ZACH GUIDROZ, et al.**                                                 **DEFENDANTS**

## REPORT AND RECOMMENDATION

On January 26, 2024, *pro se* Plaintiff Dustin Lee Patterson filed this lawsuit under 42 U.S.C. § 1983, naming Zach Guidroz, Garrett Douglas, Laura Stogner, and Sherrie Pendarvis as Defendants. [1] at 1. When he filed his Complaint, Plaintiff was an inmate in the custody of the Mississippi Department of Corrections ("MDOC") being housed at the Marion/Walthall County Correctional Facility ("MCCF") in Columbia, Mississippi. *Id*. He has since been transferred to the South Mississippi Correctional Institution in Leakesville, Mississippi. [45] at 1. Plaintiff is proceeding *in forma pauperis*, and his claims were clarified at an Omnibus Hearing on August 2, 2024.[1]

Before the Court are the Motion [42] to Dismiss filed by Douglas on October 18, 2024, the Motion [46] for Summary Judgment filed by Guidroz, Stogner, and Pendarvis on November 20, 2024, and the Motion [48] for Summary Judgment filed by Douglas on November 20, 2024. Plaintiff did not respond to any of the dispositive motions, despite having the chance to do so. *See* (Text-Only Order, Aug. 22, 2024). For the following reasons, the undersigned recommends that the Motions [46] [48] for Summary Judgment be granted and that Douglas's Motion [42] to Dismiss be denied as moot.

---

[1] *See Spears v. McCotter*, 766 F.2d 179, 181-82 (5th Cir. 1985) (authorizing the magistrate judge to "hold an evidentiary hearing" to allow a *pro se* plaintiff to provide a "more definite statement"), *abrogated on other grounds by Neitzke v. Williams*, 490 U.S. 319, 324 n.3 (1989).

**I. BACKGROUND**

Plaintiff reports that Guidroz is the Jail Administrator at MCCF, and Stogner and Pendarvis are nurses there. [10] at 1. Douglas is a Nurse Practitioner who visits patients at MCCF on a part-time basis. *Id.* Plaintiff requests $1,000,000.00 in damages, [1] at 4, because "there was an unreasonable delay" in the provision of medical care during his time at MCCF, [46-1] at 19. He also characterizes the following events as "medical negligence." *Id*. at 25.

Plaintiff began residing at MCCF in December 2023. [46-1] at 8. At that time, Douglas recommended that Plaintiff "have lab work done, due to irregular bowel movements and complaints of severe stomach acid." [1] at 5. Plaintiff's gastric symptoms were treated by providers at the jail, [46-1] at 26, with "IBS medication" and "Pepcid for acid reflux," [37] at 2. Plaintiff was then transported to Marion General Hospital "on two separate [occasions]," and "four different test vials of blood were taken." [1] at 5. One of the vials was tested for Hepatitis C, and Plaintiff requested the results of that test three times in December 2023. *Id*. By the time he filed his Complaint, Plaintiff was unsure whether he was positive for Hepatitis C. *Id*. He believed his medical providers at MCCF were not working with due urgency, as "Hepatitis C is a serious life threatening issue that will cause death if left untreated." *Id*.

On January 17, 2024, at a visit with Douglas and Pendarvis, Plaintiff learned that he tested positive for Hepatitis C. [4] at 1. Douglas advised Plaintiff that "it wasn't chronic yet," so "he wasn't going to prescribe [Plaintiff] any medication" at that time. *Id*. Plaintiff protested because he "stay[s] dehydrated and constantly ha[s] [diarrhea]," which he thinks are "common side [effects] of Hepatitis C." *Id*. Because Hepatitis C "is known for destroying the liver," Plaintiff believes that Douglas's initial refusal to prescribe medication could have amounted to "a modern

2

day cruel death sentence." *Id*. at 1-2.

At a visit with Douglas on April 18, 2024, Plaintiff was advised that "he would be going to a GI specialist" to been seen about his condition. [24] at 1. He in fact visited the GI specialist on May 7, 2024. *Id*. At that visit, the doctor ordered bloodwork and an ultrasound of Plaintiff's liver. *Id*. These tests were conducted "to determine what medications would be necessary for [Plaintiff's] . . . treatment." *Id*.

On July 5, 2024, Plaintiff advised the Court that he recently saw an unnamed Nurse Practitioner at the South Mississippi Regional Medical Center in Laurel, and that person advised that his condition had become "chronic." [28] at 1; [46-1] at 15. This Nurse Practitioner prescribed an 8-week course of medication at that time. [28] at 1. At the Omnibus Hearing, on August 2, 2024, Plaintiff testified that he would complete his course of medication by the end of the month and then "have . . . more lab work [done] to see if the medicine's working." [46-1] at 18. It was Plaintiff's understanding that the medication he was prescribed would likely "cure" his condition. *Id*. at 17 (predicting a 99.9% chance of cure). He also testified that his custodians provided his medication "daily" and that his "symptoms ha[d] improved" over the course of his treatment. *Id*. at 18.

### III. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Westfall v. Luna*, 903 F.3d 534, 546 (5th Cir. 2018) (quotation omitted). "An issue is material if its resolution could affect the outcome of the action." *Sierra*

3

*Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010) (quotation omitted). "On a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *E.E.O.C. v. WC&M Enters., Inc.*, 496 F.3d 393, 397 (5th Cir. 2007). "In reviewing the evidence, the court must therefore refrain from making credibility determinations or weighing the evidence." *Id*. at 397-98 (quotation omitted).

"Summary judgment is proper if the movant demonstrates that there is an absence of genuine issues of material fact." *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). "The movant accomplishes this by informing the court of the basis for its motion, and by identifying portions of the record which highlight the absence of genuine factual issues." *Id.* "Rule 56 contemplates a shifting burden: the nonmovant is under no obligation to respond unless the movant discharges its initial burden of demonstrating entitlement to summary judgment." *Mack v. Waffle House, Inc.*, No. 1:06-cv-00559-RHW, 2007 WL 1153116, at *1 (S.D. Miss. Apr. 18, 2007) (quotation and brackets omitted). "[O]nce a properly supported motion for summary judgment is presented, the nonmoving party must rebut with significant probative evidence." *Id*. (quotation omitted).

## IV. DISCUSSION

Plaintiff has asserted claims for deliberate indifference to his serious medical needs under 42 U.S.C. § 1983, along with "medical negligence" claims under Mississippi state law. [46-1] at 19, 25; *see also* [1] at 4. Defendants argue that the evidence refutes Plaintiff's claims arising under federal law, and that his state-law claims must be dismissed for procedural reasons under Mississippi law. [43] at 1-3; [47] at 4-14; [49] at 3-8. After examining the record and relevant legal

4

authority, the undersigned concludes that Defendants are entitled to judgment as a matter of law on Plaintiff's claims arising under federal law and that these claims should be dismissed with prejudice. The undersigned recommends that the Court decline to exercise supplemental jurisdiction over Plaintiff's state-law claims and dismiss those claims without prejudice.

### A. Plaintiff's claims arising under federal law should be dismissed with prejudice.

#### i. *Plaintiff has failed to establish a constitutional violation.*

It is unclear from the record whether Plaintiff was a pretrial detainee or a convicted prisoner when the events giving rise to this lawsuit occurred. On his Complaint, Plaintiff stated that he had not yet been convicted of a crime, but that he was "presently incarcerated for a parole or probation violation." [1] at 1. Regardless, "[t]here is no significant distinction between pretrial detainees and convicted inmates when the denial of medical care is at issue." *Brown v. Jackson Cnty.*, No. 1:08-cv-01312-HSO-JMR, 2010 WL 967897, at *4 (S.D. Miss. Mar. 15, 2010). "[A] pretrial detainee's due process rights are said to be at least as great as the Eighth Amendment protections available to a convicted prisoner." *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996) (quotation omitted).

Prisoners are not entitled to "the best [treatment] that money could buy." *Mayweather v. Foti*, 958 F.2d 91, 91 (5th Cir. 1992). A government official violates an inmate's constitutional right to medical care only when the official acts with deliberate indifference to the inmate's serious medical needs. *E.g.*, *Scott v. Vital Core Strategies*, No. 1:21-cv-00189-HSO-BWR, 2023 WL 7955275, at *5 (S.D. Miss. July 18, 2023) (Eighth Amendment), *report and recommendation adopted by* 2023 WL 7003274, at *12 (S.D. Miss. Oct. 24, 2023); *Deroche v. Hancock Cnty.*, No. 1:18-cv-00215-LG-RPM, 2021 WL 2556598, at *5 (S.D. Miss. June 22, 2021) (Fourteenth

5

Amendment). "To meet the extremely high standard for proving deliberate indifference, the plaintiff must show that the officers were aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, that the officers actually drew the inference, and that the officers disregarded that risk by failing to take reasonable measures to abate it." *See Deroche*, 2021 WL 2556598, at *5 (quotation omitted).

"Deliberate indifference cannot be inferred from negligent, or even grossly negligent, acts or omissions of a defendant; mere negligence, neglect, unsuccessful medical treatment or even medical malpractice do not give rise to a § 1983 cause of action." *Toomer v. Coulter*, No. 1:18-cv-00312-RHW, 2020 WL 1286215, at *3 (S.D. Miss. Mar. 18, 2020). "A prisoner claiming deliberate indifference to serious medical needs must submit evidence that Defendant[s] 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Id*. (quoting *Davidson v. Tex. Dep't of Crim. Justice*, 91 F. App'x 963, 965 (5th Cir. 2004)). "The determinative issue is not whether the medical treatment plaintiff received was subpar in some respect, whether his medical problems persisted despite treatment, or whether he was dissatisfied with his care; rather, it is only whether his serious medical needs were met with deliberate indifference." *Id*. (quotation, alterations, and emphasis omitted). "[T]he decision whether to provide additional treatment is a classic example of a matter for medical judgment," and "the failure to alleviate a significant risk that the official should have perceived, but did not is insufficient to show deliberate indifference." *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (quotations omitted).

"Deliberate indifference is especially hard to show when the inmate was provided with

ongoing medical treatment." *Fails v. DeShields*, 349 F. App'x 973, 976 (5th Cir. 2009). That is, "the existence of continuous medical care often precludes a finding of deliberate indifference." *Collins v. Caskey*, No. 4:07-cv-00058-HTW-LRA, 2009 WL 2368578, at *3 (S.D. Miss. July 29, 2009). "Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference." *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995).

From the evidence presented, the undersigned concludes that Defendants did not act with deliberate indifference to Plaintiff's serious medical needs. Plaintiff testified that he entered MCCF in December 2023 and that he saw Douglas the same month to address "irregular bowel movements and complaints of severe stomach acid." [1] at 5; *see also* [46-1] at 8. Medical staff at MCCF provided medication to treat Plaintiff's symptoms, [46-1] at 26, and Douglas outsourced Plaintiff's care to Marion General Hospital for further evaluation, [1] at 5. The same month, Plaintiff visited Marion General Hospital "on two separate [occasions]," and "four different test vials of blood were taken" during those visits. *Id*. About a month later, Plaintiff learned that he tested positive for Hepatitis C. [4] at 1.

Douglas declined to prescribe medication at first because Plaintiff's condition "wasn't chronic yet." *Id*. About four months later, Plaintiff saw a gastroenterologist, who conducted tests "to determine what medications would be necessary for [Plaintiff's] . . . treatment." [24] at 1. In July 2024, Plaintiff was prescribed an 8-week course of medication, [28] at 1—which he expected to "cure" his Hepatitis C, [46-1] at 17. Plaintiff testified that he received the medication from his custodians as required and that his "symptoms ha[d] improved" as a result. *Id*. at 18. Thus, Plaintiff admits that he received "continuous medical care" at MCCF, and his medical-care claims should

be dismissed with prejudice for that reason alone. *See Collins*, 2009 WL 2368578, at *3; *see also Jackson v. Hall*, No. 1:19-cv-00332-LG-RPM, 2022 WL 1194692, at *5 (S.D. Miss. Jan. 27, 2022) ("[M]onitoring an inmate's [Hepatitis C] constitutes constitutionally sufficient treatment in the absence of evidence that cirrhosis (or perhaps even fibrosis) is likely occurring." (emphasis omitted)), *report and recommendation adopted by* 2022 WL 731530, at *2 (S.D. Miss. Mar. 10, 2022).

But Plaintiff's allegations are slightly more nuanced: that the medical care he ultimately received took too long to be prescribed. [46-1] at 19. A "delay in medical care can only constitute [a constitutional] violation if there has been deliberate indifference, which results in substantial harm." *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). But Plaintiff testified that he could not pinpoint any substantial or long-lasting harm that befell him as a result of these events. [46-1] at 21. He has offered no evidence that Douglas's monitoring—rather than prescribing immediate pharmaceutical intervention—caused him any harm whatsoever. In fact, Plaintiff testified that his medication would probably "cure" his condition, and he admitted at the Omnibus Hearing that his "symptoms ha[d] improved" since filing his Complaint. *Id*. at 17-18. Thus, Plaintiff has failed to establish that he suffered any substantial harm as a result of the care he received for his Hepatitis C at MCCF. *E.g.*, *Olivas v. Corr. Corp. of Am.*, 215 F. App'x 332, 333 (5th Cir. 2007) (affirming summary judgment where the plaintiff failed to "show substantial harm related to the delay"); *Jones v. Ford*, No. 2:08-cv-00176-MTP, 2009 WL 2032398, at *6 (S.D. Miss. July 9, 2009) (granting summary judgment for the defendants where the plaintiff "neither alleged nor established that [any] delay caused him substantial harm"). And allegations of medical negligence cannot support a constitutional claim. *See Gobert v. Caldwell*, 463 F.3d 339, 346, 352 (5th Cir. 2006).

In the end, Plaintiff has adduced no evidence to show that Defendants violated his constitutional right to adequate medical care. If the moving party meets its summary-judgment burden, as Defendants have done, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). The Court does not "assume that the nonmoving party could or would prove the necessary facts" at trial. *Id.* (emphasis omitted). Yet Plaintiff failed to respond to Defendants' Motions [46] [48] for Summary Judgment, and the only competent summary-judgment evidence[2] shows that Plaintiff's complaints were not refused, ignored, or intentionally handled incorrectly. The undersigned thus recommends that Plaintiff's medical-care claims against all Defendants be dismissed with prejudice. *See, e.g.*, *Grumbles v. Livingston*, 706 F. App'x 818, 819 (5th Cir. 2017) (affirming grant of summary judgment for defendants where "[t]here [was] no competent summary judgment evidence" showing deliberate indifference).

### ii. *The Court need not analyze municipal liability or qualified immunity.*

Defendants argue that Plaintiff's claims against Guidroz in his official capacity are "actually asserted against Marion County." [47] at 9. They also argue that Stogner and Pendarvis are entitled to qualified immunity from Plaintiff's claims against them in their individual capacities. [47] at 7-9. Having concluded that no constitutional violation occurred, the Court need not reach the questions of municipal liability or qualified immunity. *See Est. of Parker v. Miss. Dep't of Pub. Safety*, 728 F. Supp. 3d 372, 385 (S.D. Miss. 2024) ("If the alleged conduct did not violate a constitutional right, the inquiry ends because there is no constitutional violation for which

---

[2] "[T]he Court considers [Plaintiff's] sworn testimony at the *Spears* hearing to be competent summary judgment evidence." *Evans v. Miss.*, No. 2:11-cv-002, 2012 WL 4480731, at *4 n.3 (S.D. Miss. Sept. 26, 2017).

9

the government official would need qualified immunity."); *Clifford v. Harrison Cnty. Miss.*, 596 F. Supp. 3d 634, 642 (S.D. Miss. 2022) ("The Fifth Circuit has stated time and again that without an underlying constitutional violation, an essential element of municipal liability is missing." (quotation and brackets omitted)).

### B. The Court should decline to exercise supplemental jurisdiction over Plaintiff's state-law claims and dismiss those claims without prejudice.

Defendants argue that Plaintiff's claims arising under state law are not cognizable for various procedural reasons. [43] at 1-3; [47] at 11-14; [49] at 5-8. "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

"The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." *Id*. § 1367(c). As a general rule, "when the primary federal claim has been settled or dismissed before trial, the district court should dismiss any lingering ancillary state-law claims." *Reed v. City of Diamondhead*, No. 1:18-cv-00169-HSO-RHW, 2019 WL 1371847, at *3 (S.D. Miss. Mar. 26, 2019) (quotation and brackets omitted). "A district court is allowed a measure of discretion and may also consider the common law factors of 'judicial economy, convenience, fairness, and comity' in addressing whether it should decline to exercise supplemental jurisdiction." *Id*. (quoting *Brookshire Bros. Holding v. Dayco Prods., Inc.*, 554 F.3d 595, 601-02 (5th Cir. 2009)). "Courts may consider the amount of resources expended on the litigation, the length of time a case has been pending, and whether a party would effectively lose the ability to

10

assert a claim if prevented from asserting it in the federal case." *Id*.

The undersigned has recommended that the Court dismiss "all claims over which it has original jurisdiction," 28 U.S.C. § 1367(c), and most of the other applicable factors weigh in favor of dismissing Plaintiff's state-law claims without prejudice. This case is in its relative infancy, at little more than a year old. The parties had an opportunity to conduct discovery, though it appears little discovery was collected—as none was attached to any of the three dispositive motions presently under consideration. Thus, it appears "that the resources [already] expended [on this case are] not exceptional," and any "discovery that the parties have completed would not need to be repeated in state proceedings." *See Reed*, 2019 WL 1371847, at *3 (quotation omitted). Moreover, "the remaining state-law claims, although not novel or complex, are better decided by a state forum." *Id*. at *4. "[T]he parties have extensively briefed state law issues, and federalism concerns . . . support allowing a state court judge to decide purely state law issues when a case is in its earliest stages." *See Est. of Parker*, 728 F. Supp. 3d at 393. Finally, there appears to be no danger that Plaintiff will effectively lose the ability to assert his state-law claims if the Court declines to adjudicate them here.

For these reasons, the undersigned recommends that the Court decline to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims and dismiss those claims without prejudice.[3] *See Bass v. Parkwood Hosp.*, 180 F.3d 234, 246 (5th Cir. 1999) ("[T]he dismissal of the pendent claims should expressly be without prejudice so that the plaintiff may refile his claims in the appropriate state court." (emphasis omitted)). "Nothing in this [Report and

---

[3] Douglas's Motion [42] to Dismiss raises defenses exclusively available under state law. Thus, the undersigned is of the opinion that it should be denied as moot based on the foregoing recommendation to decline the exercise of supplemental jurisdiction over Plaintiff's state-law claims.

11

Recommendation] should be construed as a comment on the merits of . . . [P]laintiff's state law claims." *See Williams v. City of Fayette, Miss.*, No. 5:05-cv-00034-DCB-JMR, 2006 WL 2594527, at *5 (S.D. Miss. Sept. 11, 2006). "States may recognize positive duties of care and make the breach of those duties tortious; however, the only duties of care that may be enforced in suits under § 1983 are duties found in the Constitution or laws of the United States." *Id*.

## IV. RECOMMENDATION

The Motion [42] to Dismiss filed by Defendant Garrett Douglas should be denied as moot; the Motion [46] for Summary Judgment filed by Defendants Zach Guidroz, Laura Stogner, and Sherrie Pendarvis should be granted; and the Motion [48] for Summary Judgment filed by Douglas should be granted. Plaintiff Dustin Patterson's claims arising under federal law should be dismissed with prejudice. The Court should decline to exercise supplemental jurisdiction over Plaintiff's state-law claims and dismiss those claims without prejudice.

## V. NOTICE OF RIGHT TO APPEAL/OBJECT

Within fourteen days of being served with a copy of this Report and Recommendation, any party may serve and file written objections with the Clerk of Court. An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects. Within seven days of service of the objections, the opposing party must either serve and file a response or notify the District Judge that he does not intend to respond to the objections. L.U.CIV. R. 72(a)(3).

The District Judge shall make a *de novo* determination of those portions of the Report and Recommendation to which objection is made. The District Judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge may also receive further evidence or recommit the matter to the Magistrate Judge with

instructions. *See* 28 U.S.C. § 636(b)(1).

The District Judge need not consider frivolous, conclusive, or general objections. A party who fails to file written objections to the proposed findings, conclusions, and recommendations of the Magistrate Judge shall be barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion adopted by the Court to which he did not object. *See Wallace v. Miss.*, 43 F.4th 482, 494-95 (5th Cir. 2022) (collecting cases).

**SIGNED,** this 14th day of May, 2025.

/s/ *Robert P. Myers, Jr.*
ROBERT P. MYERS, JR.
UNITED STATES MAGISTRATE JUDGE